

**ORDERED in the Southern District of Florida on August 18, 2010.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA


In re:                                                                    Case No.  10-13020-BKC-AJC
                                                                          Chapter 7
BISCAYNE BAY LOFTS, LLC,


                Debtor.                                               /

CORUS BANK, N.A., a National Banking Association,


                Plaintiff,                                            Adv. Pro. No. 10-02724-AJC

vs.

BISCAYNE BAY LOFTS, LLC, a limited liability                              State Court Case No. 09-34794 CA32
company; WILLY A. BERMELLO, an individual;
GUSTAVO MICULITZKI, an individual; ONYX
ON THE BAY CONDOMINIUM ASSOCIATION, INC.,
a Florida Not-For-Profit corporation; and
MK CONTRACTORS, LLC,  a Florida limited liability
company,


                Defendants.                                           /
MK CONTRACTORS, LLC,  a Florida limited liability
company,


                Counter-Plaintiff,

v.

CORUS BANK, N.A., a National Banking Association;
HYPERION ONYX PARTNERS, LLC, a Florida
limited liability company,


                Counter-Defendants.                                   /

## MEMORANDUM ORDER STRIKING COUNTERCLAIMS

Hyperion Onyx Partners, LLC ("Hyperion"), by and through its attorneys, submits this Memorandum of Law on behalf of Barry A. Mukamal (the "Trustee") the duly appointed Chapter 7 Trustee for the estate of Biscayne Bay Lofts, LLC ("BBL" or "Debtor"). On June 24, 2010, during the most recent status conference, the Trustee raised the issue that the causes of action asserted by Willy A. Bermello and Gustavo Miculitzki against Corus Bank by way of counterclaim are property of the estate and can only be pursued by the Trustee. The Court requested the parties submit memoranda on this issue. Since the BBL estate is administratively insolvent, the Trustee requested that Hyperion submit the memorandum of law on his behalf. In support thereof, Hyperion states:

## FACTUAL BACKGROUND

On February 9, 2010, this involuntary bankruptcy proceeding was filed against Biscayne Bay Lofts, LLC ("BBL" or "Debtor"). The Debtor is the developer for the condominium known as Onyx on the Bay, a 28-story condominium building on a 40,570 square foot site located at 665 Northeast 25th Street, Miami, Florida (the "Property"), consisting of 118 residential condominium units (the "Units") and 138 parking spaces (collectively, the "Project"). The Project is still under construction: 78 units have been conveyed to residents and 40 remain to be conveyed.

The Units are subject to a mortgage granted by the Debtor to Corus Bank, N.A., a national banking association ("Corus" or "the Bank"), dated September 20, 2004 and recorded at OR Book 22768, Page 419 ("Mortgage"). On or about September 11, 2009, Corus executed and delivered an assignment of the Mortgage to Hyperion ("Assignment"). The Assignment was duly recorded at OR Book 27014, Page 4890.

2

The Mortgage secures the obligations of the Debtor to Corus, and now Hyperion, pursuant to certain commercial promissory notes ("Notes"), in the aggregate original principal amount of in excess of $44,000,000. As of the Petition Date, the balance due and owing to Hyperion under the Notes is $22,309,280.23.[1]

Prior to the Petition Date, the Mortgage was in foreclosure in an action in the Circuit Court of the Eleventh Judicial Circuit In and For Miami-Dade County, Florida styled *Corus Bank, N.A., a national banking association, Plaintiff, vs. Biscayne Bay Lofts, L.L.C., a Florida limited liability company; Willy A. Bermello, an individual; Luis Ajamil, an individual; Gustavo Miculitzki, an individual; Onyx On The Bay Condominium Association, Inc., a Florida not for profit corporation; and MK Contractors, LLC, a Florida limited liability company, Defendants*, Case No. 09-34794CA05 (the "State Court Foreclosure Action").

On July 24, 2009, the Debtor and two of its guarantors, Willy A. Bermello and Luis Ajamil, filed their Answer, Affirmative Defenses and Counterclaims.  They allege that: (a) Corus failed to disburse loan proceeds in accordance with the loan documents; (b) Corus breached the loan agreement; and (c) Corus failed to act in good faith in performing its obligations under the loan documents.  On July 30, 2009, the third guarantor, Gustavo Miculitzki, through separate counsel, filed his own Answer, Affirmative Defenses and Counterclaims.  The latter pleading alleges similar claims as the former. (Willy A. Bermello, Luis Ajamil and Gustavo Miculitzki shall hereinafter be collectively referred to as the "Guarantors").

No privity exists between the Guarantors and the Debtor and the causes of action asserted. The business organizational structure of the Debtor is as follows: BAP, LLC and GGM Developers, LLC are the equity holders of the Debtor, Biscayne Bay Lofts, LLC. In turn, the

---

[1] Plus advances, late charges, costs and attorneys' fees.

Guarantors are the individual equity holders of BAP, LLC that owns a 50% equity share of the Debtor. The Guarantors are twice removed from the Debtor.  The equity owners of the Debtor (the LLC's) have never asserted any such claims or counterclaims.  A review of the counterclaim indicates that there is no independent cause of action for the Guarantors or BAP, LLC or GGM Developers, LLC, as the only transaction referenced therein is the underlying contract between the Debtor and Corus Bank. Thus, the causes of action asserted in the Guarantors counterclaims are those of the Debtor's estate and only presentable by the Trustee of Biscayne Bay Lofts, LLC.

On March 5, 2010, Hyperion filed a Notice of Removal and Removal of Action Under 28 U.S.C. § 1452 removing the State Court Foreclosure Action to the Bankruptcy Court (the "Removed Actions").

## ANAYLYSIS

The Guarantors allege that certain purported delays in funding certain payment requisitions caused the Project to "miss the real estate bubble", and as a result, Corus, and therefore Hyperion, is liable to the Debtor and, by derivative rights, to equity as well.  This cause of action, even if viable, does not belong to the Guarantors, who are equity of equity, but rather, to the Debtor's bankruptcy estate. There are two analyses that must be undertaken. First, an analysis under Florida Law must be undertaken, and then an analysis under bankruptcy law. Property rights are generally determined in the first instance by a review of state law.  *See Butner v. United States*, 440 U.S. 48, 55 (1979):

> Unless some federal interest requires a different result, property interests in bankruptcy are to be analyzed under applicable state law .  .  .

*See also, generally*, *In re Raymond Professional Group*,  408 B.R. 711 (Bankr. N. D.Ill. 2009); *In re Cook*, 384 B.R. 282 (Bankr. N.D.Ala. 2008).

A review of Florida law unequivocally establishes that equity (even if direct) and guarantors have no standing to assert causes of action owned by their corporation where their corporation directly suffers the alleged injuries. *Chaul v. Abu-Ghazeeh*, 994 So. 2d 465 (3rd DCA 2008). In *Chaul*, equity attempted to bring an independent cause of action related to a transaction where they claimed the corporation received inadequate consideration in a certain transaction. The 3rd DCA held that the plaintiffs "have no standing to bring a direct action for injuries allegedly suffered by [the corporation]. *Id.* at 446. The Court went on to hold that "Plaintiff's may not sue directly for an injury sustained by [the corporation] as to which plaintffs' only claim is that the value of their investment in [the corporation] was diminished." *Id.*; *see also*, *Alario v. Miller*, 354 So. 2d 925 (Fla. App. 1978) (if damages are only indirectly sustained by a stockholder as a result of a direct injury to the corporation, the stockholder does not have standing to sue).

In *Lewis v. Seneff,* 654 F. Supp. 2d 1349 (M.D. Fla. 2009), a case wherein equity was asserting damages based upon a breach of fiduciary duty because certain general partners allegedly diverted millions of dollars to themselves in a transaction they orchestrated, the Court held that the only possible way in which equity could bring an action was through a shareholder derivative action. The Court noted that a shareholder derivative action "is a cause of action brought by a stockholder to enforce a right of action that exists on behalf of a corporation. *Fox v. Prof'l Wrecker Operators of Florida, Inc.*, 801 So. 2d 175, 179 (5th DCA 2001). *Id.* at 1337.[2]

It must be remembered that the gravamen of the Guarantors' actions are that Corus breached its funding obligation to the Debtor under a contract between the Debtor and the Bank,

---

[2]    In *Alario*, at page 927, the court noted that in order to bring a derivative action, it must name the corporation as a defendant, the corporation is a necessary party and any recovery received would flow to the corporation and not the individuals. The court held that "failure to make the corporation a party is not a mere defect of parties, but leaves the stockholder without a cause of action and the court without jurisdiction. *Id.* at 926.

and that as a result of those alleged breaches, the Project was never completed. Essentially, Hyperion will still be owed in excess of $10,000,000 if it is allowed to credit bid $12,500,000 at the auction and acquires the asset at that price, resulting in a *defacto* loss of the Guarantor's entire equity interest in the Debtor (to the extent that they had any such interest).  To bring a shareholder derivative suit on behalf of the Debtor, there is a continuous ownership requirement. Even if the Guarantors were direct equity of the Debtor (which they are not), the facts of this case would have rendered their equity interest valueless and they would no longer have standing to bring a shareholder derivative action under Florida law.  The loss of value in their equity deprives them of the right to file a shareholder derivative action, which, in any event, they have not done. Thus, there is a break in the continuous ownership requirement. The Court held that "[p]laintiffs who lose their shares involuntarily have no greater interest in the continued well being of the corporation than plaintiffs which willingly sell their shares. Neither class of plaintiff retains a proprietary interest in the corporate enterprise." *Id.* at 1373. The *Lewis* Court also noted an unpublished Eleventh Circuit holding, *Hantz v. Belyew*, 194 Fed. Appx. 897, 899 (11th Cir. 2006). In *Hantz*, the Eleventh Circuit held that under Florida law "former shareholders whose common stock was eliminated in a Chapter 11 bankruptcy did not meet the continuous stock ownership requirement for standing to bring a derivative action under Florida law. *Id.*

It is clear that under Florida law, the Guarantors have no standing to assert causes of action that belonged to the Debtor, and now the Trustee.

Under a bankruptcy law analysis, the result is the same. Property rights of the estate are very broad under §541 of the Bankruptcy Code. *See, generally, United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204 (1983) (estate consists of all legal and equitable interests of the Debtor.) Certainly, allegations that the malfeasance of the Debtor's Bank that purportedly caused the

Debtor's Project to fail, are a direct injury suffered by the Debtor, and if proven, belong to the

Trustee and not the Guarantors.

There is ample case law on this issue because the law is so well-settled. Two cases

provide useful analysis. In *First New York Bank for Business v. DeMarco*, 130 B.R. 650

(S.D.N.Y. 1991), the guarantors of a corporate obligation alleged that the bank mismanaged the

corporation during its period of control, with the result that the guarantors claimed such action as

a defense to their guarantys. This is the basic scenario presented in the instant case. In *First*

*Bank*, the District Court held:

> [the] allegations assert harm to [the debtor] and thus any claims, if they exist,
> belong to [the debtor] itself and the defendants as guarantors, lack standing to
> assert them as either defenses or counterclaims (internal citations omitted).
> Although certain exceptions exist to the rule that a guarantor may not raise claims
> of its principals, where that principal is controlled by the guarantors, as in the
> case where the guarantors are the directors and sole shareholders of a closely held
> corporation (internal citations omitted), such exception does not apply where, as
> here, the principal is bankrupt and no longer a going concern. The reason is clear.
> The limited exception is based on a notion of implied consent by the principal
> which consent can be inferred by the fact that the guarantors control and speak
> for the principal. However, because [the corporation] is now in bankruptcy, any
> claims existing on behalf of the company are property of the estate (internal
> citations omitted), and such claims now belong exclusively to the trustee in
> bankruptcy . . ."

*Id.* at 655.  The court also noted that the guarantors "had no right to bring an action in

there own names for an alleged wrong committed against the corporation." *Id.*

Finally, in a case decided by the Sixth Circuit Court of Appeals, *Van Dresser*

*Corporation v. Comerica Bank*, 128 F. 3d 945 (6th Cir. 1997), which involved a

guarantors/shareholders suit of numerous parties for torts committed against their corporation,

the Court held that "[t]he code gives the trustee the *exclusive* right to prosecute any claim held by

the bankruptcy estate. Because the tortuous conduct [the guarantor/shareholder] alleged also

injured the debtors, only the Debtor' estates can recover from the defendants." *Id.* at 947. The

7

Court also noted "where the injury is 'separate and distinct' from that of other shareholders, generally, the shareholder may sue." *Id.* at 948. Such is the case here, further limited by the fact that the Guarantors are not direct equity holders in the Debtor, but are twice removed, and yet seek to sue individually based upon the relationship between the Debtor and the Bank. The Guarantors' position is clearly a bridge too far. Accordingly, it is

**ORDERED AND ADJUDGED** that the counterclaims asserted by the Guarantors are property of the estate, and such counterclaims, as stated by the Guarantors are stricken.

### ###

Copies furnished to:

James Fierberg, Esq.
Andrea Harley, Esq.
Diane Noller Wells, Esq.

Attorney Fierberg is directed to serve a conformed copy of this order upon all interested parties immediately upon receipt of same and shall file a certificate of service with the Court.